# Supreme Court of Texas

====

No. 24-1010

====

In re E. Pierce Marshall, Jr.,

*Relator*

====

On Petition for Writ of Mandamus

====

*and*

====

No. 25-0057

====

In re Edwin K. Hunter,

*Relator*

====

On Petition for Writ of Mandamus

====

JUSTICE YOUNG and JUSTICE SULLIVAN, dissenting from the denials of the petitions for writ of mandamus.

Does attorney immunity provide immunity from suit or only from liability? Another way to frame this question is to ask *when* the substantive rights that the law calls "attorney immunity" may be invoked—only after

a trial that the attorney-immunity doctrine says should never happen in the first place, or upon a trial court's refusal to grant relief? A straight answer would benefit Texas attorneys, the clients they represent, and the state and federal courts that confront this recurring issue with surprising regularity. But there is precious little clarity to be found in this Court's inconsistent pronouncements about the nature of attorney immunity, as reflected in an entrenched split among our intermediate state courts. To date, the leading case on this topic is an *Erie* guess from the Fifth Circuit.

The Supreme Court of Texas can and should do better. By denying this pair of mandamus petitions, however, the Court passes on a chance to deliver an authoritative clarification. We respectfully dissent from this missed opportunity.

## I

These two cases—No. 24-1010, *In re Marshall*, and No. 25-0057, *In re Hunter*—involve an intra-family drama with billions of dollars at stake. We recount the story only for background. The complex questions of trust-and-estate law that frame the underlying dispute are not before us; instead, the petitions denied today ask us to address whether, wholly aside from any other questions, a defendant who thinks himself entitled to "attorney immunity" because he is being sued for work performed as a lawyer may have that entitlement resolved before enduring a trial.

The story started after E. Pierce Marshall, Sr., passed away, leaving his wife, Elaine T. Marshall, as the trustee and income beneficiary of a Texas trust. The trust document states that upon Elaine's death, Pierce Sr.'s youngest son, Real Party in Interest Preston Marshall, will become the successor trustee. Should Preston be unable to do so, the trust document

2

provides that an "independent person," rather than Pierce Sr.'s oldest son, Relator E. Pierce Marshall, Jr., will serve as successor trustee.

But in her capacity as trustee, Elaine performed a series of complex legal maneuvers to effectively designate Pierce Jr.—and not Preston or any independent person—as the successor trustee of a newly created trust in Wyoming. The short of it all is that Elaine merged the existing Texas trust into a Wyoming trust, with only the Wyoming trust surviving. All agree that the Wyoming trust did not alter the rights that Pierce Jr. or Preston otherwise would have had as beneficiaries under the Texas trust. Indeed, the Wyoming trust divides the corpus into two *equal* marital trusts—one for Preston and his children, and the other for Pierce Jr. and his children.

For Preston, however, all things are not equal. He sued his mother, Elaine; his brother, Pierce Jr.; and attorney Edwin K. Hunter, alleging that by designating Pierce Jr. as trustee, Elaine is liable for breach of fiduciary duty and that Pierce Jr. and Hunter aided and abetted her breach. He explains that upon Elaine's death, the Marshall family will owe substantial inheritance tax and Pierce Jr. will be responsible for paying the bill as trustee. Therefore, Preston continues, Pierce Jr. could structure the transactions necessary to liquidate the family's substantial holdings to benefit himself and harm Preston, hence the suit.

After discovery, both Pierce Jr. and Hunter moved for summary judgment based on attorney immunity, which the trial court denied. Pierce Jr. then sought mandamus relief from the court of appeals, which stayed the trial court's proceedings while it considered the petition. The court of appeals then denied the mandamus petition and lifted the stay without comment. *In re Marshall*, No. 14-24-00230-CV, 2024 WL 4501234, at *1

3

(Tex. App.—Houston [14th Dist.] Oct. 16, 2024, orig. proceeding). Hunter likewise sought mandamus relief, which the court of appeals also denied without comment. *In re Hunter*, No. 14-24-00296-CV, 2024 WL 4502117, at *1 (Tex. App.—Houston [14th Dist.] Oct. 16, 2024, orig. proceeding).

There are distinctions in the factual background, procedural posture, and legal arguments presented by Pierce Jr. and Hunter. But what matters is their similarity: they both now seek a writ of mandamus from this Court to prevent the right they claim from being impaired or lost.

## II

Attorney immunity has been a frequent topic in this Court's jurisprudence. *E.g.*, *Taylor v. Tolbert*, 644 S.W.3d 637, 645 (Tex. 2022); *Haynes & Boone, LLP v. NFTD, LLC*, 631 S.W.3d 65, 73 (Tex. 2021); *Landry's, Inc. v. Animal Legal Def. Fund*, 631 S.W.3d 40, 47, 51–53 (Tex. 2021); *Bethel v. Quilling, Selander, Lownds, Winslett & Moser, P.C.*, 595 S.W.3d 651, 654 (Tex. 2020); *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015). By now, the analysis is well-established. We have said that the "*only* facts" needed to support the "common-law attorney-immunity defense" are (1) "the type of conduct at issue" and (2) "the existence of an attorney–client relationship at the time the attorney engaged in the conduct." *Taylor*, 644 S.W.3d at 645–46 (emphasis added; internal quotation marks omitted). The immunity is not primarily to protect attorneys (who "must be able to pursue legal rights they deem necessary and proper") but to protect their clients, the public at large, and the courts, who justifiably expect lawyers to "competently, diligently, and zealously represent" their clients. *Id.* at 647 (citation omitted). Of course, our approach has been "functional, not qualitative, and leaves

4

an attorney's improper conduct addressable by public remedies," including "sanctions, professional discipline, or criminal penalties, as appropriate." *Id.* at 646, 648. Attorneys, to be clear, have no incentives to engage in misconduct or to violate the law, and there are many tools to enforce the high demands of the profession. But at base, attorney immunity "furthers loyal, faithful, and aggressive representation" by Texas attorneys for their likely Texan clients. *Id.* at 647 (internal quotation marks omitted).

Despite our familiarity with the doctrine, these cases raise issues that this Court has not yet directly addressed and that arise in a distinct factual context, too. For example, *Marshall* involves whether a genuine issue of material fact exists regarding the "existence of an attorney–client relationship"—*i.e.*, whether Pierce Jr. in fact represented his mother Elaine in the Wyoming transactions. But *Marshall* also raises significant questions that affect the legal profession in Texas—to say nothing of the clients it serves. So too in *Hunter*, as both Hunter and Pierce Jr. argue that attorney immunity is immunity from suit and not simply immunity from liability.

To vindicate their perceived immunities, Pierce Jr. and Hunter say that mandamus relief is appropriate not only because the trial court clearly abused its discretion in denying their motions for summary judgment, but also because they have no adequate remedy by appeal. It is, at a minimum, their latter argument that the Court should address—not just for these parties or on these facts.

Yet exactly *these parties* and *these facts* demonstrate the need for this Court's intercession. We do not regularly see so many simultaneous

5

hallmarks of what merits the Court's attention: a fight about the loss of a substantive right; the precedents of this Court that support each competing faction; the inconsistency among the courts of appeals; and (to top it all off) an *Erie* guess from the Fifth Circuit, which all factions both defend and attack and which reflects a now-settled legal practice in the federal courts applying Texas law despite disarray in the lower Texas courts about the same legal practice.

In our view, the Court should take this opportunity to provide clarity by setting these cases for argument to answer whether "[m]andamus relief is appropriate to correct a clear abuse of discretion" for which the relators have "no adequate remedy by appeal." *In re Facebook, Inc.*, 625 S.W.3d 80, 86 (Tex. 2021) (internal quotation marks omitted).

**A**

This section begins by explaining Pierce Jr.'s and Hunter's theory for why mandamus, and not the usual appellate process, is the appropriate vehicle for vindicating their attorney-immunity defenses. We then turn to the Fifth Circuit's *Erie* guess, which finds support in this Court's precedents. Next, we note the inconsistencies among the courts of appeals and then offer a potential solution to the cognitive dissonance, harmonizing our holdings despite Preston's concerns with our doing so. Finally, we note that the attorney-immunity doctrine frequently arises in both state and federal litigation, revealing just how unfortunate it is that the Court fails to seize this opportunity.

Start with the theory behind the petitions. Generally, mandamus relief is "unavailable when a trial court denies summary judgment, no matter how meritorious the motion." *In re McAllen Med. Ctr., Inc.*, 275

6

S.W.3d 458, 465 (Tex. 2008). That is true of most procedural rulings that fall short of a final judgment. For example, a trial court's order for a new trial has been generally regarded as unreviewable, *see, e.g.*, *In re Rudolph Auto., LLC*, 674 S.W.3d 289, 299 (Tex. 2023), but this Court has held that a new-trial order that improperly eliminates a jury's verdict is subject to mandamus review, *see id.* at 299–302. To take another example outside civil litigation, denial of a double-jeopardy claim must be reviewed before trial if the right against double jeopardy is to be effective. *E.g.*, *Abney v. United States*, 431 U.S. 651, 659 (1977). Pierce Jr. and Hunter assert that the attorney-immunity doctrine likewise logically demands vindication before trial. They say that by denying attorney immunity where it clearly applies, the trial court will force them to litigate Preston's claims at trial, thereby irreparably compromising the protections they believe are provided by attorney immunity.

Pierce Jr. and Hunter analogize their situation to the one the Court confronted in *Facebook*, 625 S.W.3d at 84, 86. There, Facebook filed a Rule 91a motion to dismiss based on a federal statute that provides immunity from suit for causes of action brought under inconsistent state laws. *Id.* at 86 (citing 47 U.S.C. § 230(c), (e)(3)). The Court acknowledged that "mandamus relief is often unavailable to correct the erroneous denial of a motion to dismiss" but observed that mandamus "may nevertheless be warranted if a litigant would suffer 'impairment or loss' of 'important substantive . . . rights' while awaiting the error's correction on appeal." *Id.* (omission in original) (quoting *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 136 (Tex. 2004)). Because section 230 immunity was one such "important substantive right[]," which "confers '*immunity from*

7

*suit* rather than a mere defense to liability'" according to "federal cases interpreting section 230," the Court held that mandamus could issue "if the denials of Facebook's motions to dismiss were erroneous." *Id.* at 87 (quoting *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 254 (4th Cir. 2009)).

According to Pierce Jr. and Hunter, attorney immunity is like section 230 immunity in that it is an immunity from suit rather than a mere defense to liability—and like section 230 immunity, attorney immunity is a substantive right "to avoid litigation of this nature," which "would be impaired if [they] had to await relief on appeal." *Id.* So just as the Court departed from its general rule not to deploy mandamus to correct the erroneous denial of a motion to dismiss in that case, the Court should depart from its general rule not to do so from the erroneous denial of a summary-judgment motion here. *See id.* Pierce Jr. and Hunter's interpretation of attorney immunity, like *Facebook*'s interpretation of section 230 immunity, has significant support among our colleagues on the federal bench.

In *Troice v. Proskauer Rose, L.L.P.*, the Fifth Circuit made an *Erie* guess and "conclude[d] that the Texas Supreme Court would consider attorney immunity to be a true immunity from suit" and *not* just "a simple defense to liability." 816 F.3d 341, 345, 348 (5th Cir. 2016). The court wrestled with whether the "denial of a motion to dismiss based on attorney immunity [was] appealable under the collateral order doctrine." *Id.* at 344. In answering that question "in the affirmative," the court concluded that "the policies underlying attorney immunity support[ed] the conclusion that Texas courts seek to protect attorneys against *even*

8

*defending a lawsuit*" and that "Texas courts describe[d] conduct covered by attorney immunity as not actionable (and attorneys engaging in that conduct as immune *from suit*)." *Id.* at 344, 348 (emphases added).

We can readily see how the Fifth Circuit decided (and has not since questioned) that we would reach that conclusion. *See, e.g., Troice v. Greenberg Traurig, L.L.P.*, 921 F.3d 501, 507 n.2 (5th Cir. 2019) (noting its prior holding in *Troice v. Proskauer Rose* that "attorney immunity is properly characterized as true immunity from suit"); *but see Frias v. Hernandez*, 142 F.4th 803, 810–13 (5th Cir. 2025) (Oldham, J., concurring) (calling into question the Fifth Circuit's extension of the collateral-order doctrine to state-law immunities). We will start with some of this Court's language that might support the *opposite* view:

- We have said that "[t]he common-law attorney-immunity defense" shields counsel from "*liability* in a civil suit." *Taylor*, 644 S.W.3d at 646 (emphasis added).

- We have recalled that attorney immunity "stem[s] from the broad declaration over a century ago that 'attorneys are authorized to practice their profession, to advise their clients and interpose any defense or supposed defense, without making themselves *liable* for damages.'" *Cantey Hanger*, 467 S.W.3d at 481 (emphasis added) (quoting *Kruegel v. Murphy*, 126 S.W. 343, 345 (Tex. Civ. App.—Dallas 1910, writ ref'd)).

At *first* blush, that might sound like this Court has regarded attorney immunity as just a defense, meaning that *Troice* got it all wrong. Yet take these two additional snippets from our decision in *Taylor*:

- "To prevent chilling [lawyers'] faithful discharge of [their] dut[ies]" to their clients, "lawyers must be able to pursue legal rights they deem necessary and proper for their clients *without the menace of civil liability* looming over them and influencing their actions." 644 S.W.3d at 647 (emphasis added).

9

- Attorney immunity not only "remov[es] the fear of personal liability," but also "alleviat[es] in the mind of [an] attorney any fear that he or she *may be sued* by or held liable to a non-client for providing . . . zealous representation." *Id.* (emphasis added; internal quotation marks omitted).

Or this snippet from our decision in *Haynes & Boone*:

- Attorney immunity protects against "the threat of litigation . . . *and* liability." 631 S.W.3d at 74 (emphasis added).

And perhaps most notably, between just two pages of the *South Western Reporter*, this Court has recounted that "as a general rule, attorneys are immune from *civil liability* to non-clients for actions taken in connection with representing a client in litigation," *Bethel*, 595 S.W.3d at 657 (emphasis added) (quoting *Cantey Hanger*, 467 S.W.3d at 481), while also summarizing that case as holding "attorney immunity shield[ed the defendant law firm] from *civil suit* by a third party," *id.* at 658 (emphasis added).

So at *second* blush, these decisions *might* illustrate that the Court does not really have a view—sometimes saying that attorney immunity was immunity from suit but other times saying that attorney immunity is immunity from liability. The same could be said of our state courts of appeals. Like our decisions in *Taylor*, *Haynes & Boone*, and *Bethel*, some have oscillated between describing attorney immunity as immunity "from suit" and as immunity "from liability." *E.g.*, *Kappos v. Baxter*, No. 05-19-00020-CV, 2019 WL 5615147, at *4 (Tex. App.—Dallas Oct. 30, 2019, no pet.); *Dixon Fin. Servs., Ltd. v. Greenberg, Peden, Siegmyer & Oshman, P.C.*, No. 01-06-00696-CV, 2008 WL 746548, at *7 (Tex. App.—Houston [1st Dist.] Mar. 20, 2008, pet. denied). Others simply proclaim that under the attorney-immunity doctrine, "an attorney is generally entitled to immunity *from a civil lawsuit*." *E.g.*, *1st & Trinity Super Majority, LLC*

*v. Milligan*, 657 S.W.3d 349, 368 (Tex. App.—El Paso 2022, no pet.) (emphasis added); *see also In re Shire PLC*, 633 S.W.3d 1, 18 (Tex. App.—Texarkana 2021, orig. proceeding [mand. denied]) ("immunity from suit"); *Campbell v. Mortg. Elec. Registration Sys., Inc.*, No. 03-11-00429-CV, 2012 WL 1839357, at *6 (Tex. App.—Austin May 18, 2012, pet. denied) (same).

But there is a possible *third* blush that harmonizes this Court's statements:  To say that attorney immunity protects attorneys from "liability" is not wrong, just incomplete.  The "menace" of liability that the doctrine protects against, *see Taylor*, 644 S.W.3d at 647, goes beyond "liability" itself—it protects against the *threat* of liability, which would arise by virtue of being subjected to suit for the provision of legal services to a client.  If attorney immunity is immunity from suit, in other words, it also necessarily protects against liability itself.  In this way, all the statements in our cases could coexist—it is true enough that attorney immunity protects against damages, for example, if it also protects against the lawsuit altogether.

Take, for example, an early case discussing the attorney-immunity doctrine.  In *National Savings Bank of D.C. v. Ward*, the U.S. Supreme Court concluded that "an attorney is *not liable to an action* . . . of one between whom . . . the relation of attorney and client does not exist."  100 U.S. 195, 200 (1879) (emphasis added).  Its conclusion relied on "several cases of high authority," one of which held "that [a solicitor] could not be *held responsible*" to a third-party plaintiff.  *Id.* at 200–01 (emphasis added).  We could therefore read *Ward*—and our attorney-immunity cases like it—to suggest that attorney immunity is *both* immunity from suit (*i.e.*, "to an action") *and* immunity from liability (*i.e.*, from being "held responsible").

11

Under this harmonious reading, not only is the Fifth Circuit's *Erie* guess in *Troice v. Proskauer Rose* correct, but so are this Court's holdings. The importance of attorney immunity—which, again, could be immunity *both* from suit *and* from liability—may be such that its clearly improper denial at any pretrial stage of litigation warrants mandamus relief. And if so, this Court should say as much. As Pierce Jr. argues, in some cases (perhaps in many, or perhaps just in his), "*not* applying [attorney] immunity will have serious ramifications and significantly undermine the important principles that animate the immunity—ensuring clients receive zealous and loyal representation by their attorneys without the specter of vexatious litigation brought by interlopers to the attorney–client relationship." In deciding whether attorney immunity is immunity from suit, from liability, or from both, the Court will not have to definitively answer whether mandamus could issue in every attorney-immunity case. Rather, it will settle a question that is vital both to the public and to the bar, clarifying the benefit and cost of the bargain of entering an attorney–client relationship in this State.

We do appreciate, however, Preston's potentially portentous point, which is that neither *Troice* nor any of our attorney-immunity precedents have given any consideration to the notion that "immunity from suit" might have jurisdiction-implicating effects. He reminds us that "immunity from suit implicates subject-matter jurisdiction," *Pepper Lawson Horizon Int'l Grp., LLC v. Tex. S. Univ.*, 669 S.W.3d 205, 211 (Tex. 2023), whereas "[i]mmunity from liability, unlike immunity from suit, does not affect a court's jurisdiction to hear a case," *Gulf Coast Ctr. v. Curry*, 658 S.W.3d 281, 284 (Tex. 2022); *accord Von Dohlen v. City of San Antonio*, 643 S.W.3d

12

387, 392 (Tex. 2022) ("Only immunity from suit implicates a court's subject-matter jurisdiction."). For Preston, this means that attorney immunity must necessarily be mere immunity from liability, "an affirmative defense," *Curry*, 658 S.W.3d at 284, which "bars enforcement of a judgment," akin to, say, official immunity, *Brown & Gay Eng'g, Inc. v. Olivares*, 461 S.W.3d 117, 121 (Tex. 2015).

To Preston's point, it is conspicuous that not once in our relatively recent, repeated visits to the attorney-immunity doctrine—despite at least suggesting that attorney immunity can preclude litigation altogether—have we even hinted that a finding of attorney immunity destroys or even pertains to the courts' subject-matter jurisdiction. *E.g.*, *Taylor*, 644 S.W.3d at 645. Equally conspicuous is that we have been aware of *Troice*, *see Youngkin v. Hines*, 546 S.W.3d 675, 679 n.2 (Tex. 2018) (citing *Troice*, 816 F.3d at 346–47), yet none of our later-written attorney-immunity opinions can be read to have expressly adopted its holding, *see Haynes & Boone*, 631 S.W.3d at 73; *Bethel*, 595 S.W.3d at 654; *Cantey Hanger*, 467 S.W.3d at 481. We have also expressly stated that "[a]ttorney immunity is an affirmative defense." *Bethel*, 595 S.W.3d at 654.

Setting aside the fact that, as far as we can tell, this Court has never needed to engage with the issue Preston raises, we find that the solution may well be simple—to reject as a false dichotomy the idea that attorney immunity *either* constitutes a jurisdictional doctrine (such that even if a lawyer never invokes it, he could later challenge a judgment against him on the ground that the court lacked jurisdiction) *or* is nothing but a defense that cannot be remedied until an appeal (such that if a lawyer invokes it and a court wrongly denies it, the entitlement not to go through trial can

13

only be remedied after going through trial). Instead, it is possible that the doctrine confers a significant right to avoid litigation altogether, such that a denial of that claim before trial cannot be allowed to await appeal because doing so would destroy the very right at issue. *See, e.g.*, *Haynes & Boone*, 631 S.W.3d at 79 (emphasizing that lawyers must be able to "competently, diligently, and zealously represent their clients' interests while avoiding any conflicting obligations or duties to themselves or others"). New-trial orders, double-jeopardy invocations, and other matters that have not yet ripened into a final judgment prove the dichotomy is a false one.

All mandamus actions, after all, require a showing that awaiting appeal would provide only an inadequate remedy. At the same time, the Court could also hold that an attorney who fails to invoke attorney immunity before trial has forfeited the mandamus aspect of the immunity's protections. Instead, that attorney could, if necessary (and if otherwise adequately preserved at trial), appeal an adverse judgment in the usual course to avoid any damages if the doctrine applies. So even if attorney immunity does not implicate subject-matter jurisdiction, that does not mean a party must wait until trial to vindicate it.

Resolving what procedural vehicle might be available strikes us, therefore, as a matter for another day: at the very least, *if* attorney immunity protects against going through litigation, appeal cannot be an adequate remedy, and mandamus ought to be available. It is of no moment to us that Pierce Jr. has not asserted his right to immunity from suit by filing a plea to the jurisdiction. Maybe he could have; more likely, given our doubt that there is any true jurisdictional aspect of this common-law immunity, he proceeded exactly as he should have. We can avoid the fire

14

swamp of subject-matter jurisdiction and rest assured that "the attorney-immunity defense is not without its limits." *Id.* at 77. Ultimately, it is incumbent upon this Court, and no other, to set its boundaries.

Using mandamus to vindicate a clearly erroneous denial of attorney immunity is no innovation. As Pierce Jr. notes, certain lower courts have granted mandamus relief after finding that attorney immunity should have been granted upon a Rule 91a motion to dismiss. *See In re Canfora*, No. 01-21-00128-CV, 2021 WL 4095580, at *1 (Tex. App.—Houston [1st Dist.] Sept. 9, 2021, orig. proceeding); *In re Sams*, No. 05-22-00150-CV, 2022 WL 3354137, at *3 (Tex. App.—Dallas Aug. 15, 2022, orig. proceeding). True, *Canfora* found that mandamus relief was appropriate given that "there is no adequate remedy by appeal if a Rule 91a motion is improperly denied." 2021 WL 4095580, at *9; *see also In re Farmers Tex. County Mut. Ins. Co.*, 621 S.W.3d 261, 266 (Tex. 2021) ("Mandamus relief is appropriate when the trial court abuses its discretion in denying a Rule 91a motion to dismiss."). And *Sams* concluded that mandamus relief "[was] appropriate in this case to spare the parties and the public the time and money spent on a fatally flawed proceeding." 2022 WL 3354137, at *3; *see also In re Essex Ins. Co.*, 450 S.W.3d 524, 528 (Tex. 2014) (holding that mandamus relief was appropriate to "spare the parties and the public the time and money spent on fatally flawed proceedings"). But it strikes us that these courts may have been onto something in deploying mandamus relief in the context of attorney immunity—and if they were not, then this Court should say so.

Attorney immunity, after all, is frequently before the courts. As recently as this spring, attorneys representing our State discussed attorney

15

immunity in a brief to the Fifth Circuit, noting first that "Texas law provides attorneys immunity *from suit*" and then stating that it shields attorneys "from liability." Br. for Texas as *Amicus Curiae* in Support of Rehearing En Banc at 2, 3, *United States ex rel. Doe v. Planned Parenthood Fed'n of Am., Inc.*, No. 23-11184 (5th Cir. Mar. 19, 2025) (emphasis added). It is unsurprising that *Planned Parenthood* arose from an appeal of a collateral order, with the Fifth Circuit again "conclud[ing] that under federal, Texas, and Louisiana law, attorney immunity is akin to immunity from suit," meaning the "court must permit the collateral order appeal." 2025 WL 618102, at *4 (5th Cir. Feb. 26, 2025) (per curiam) (not designated for publication).

What is more, this Court has recently received petitions that raise the doctrine. *See, e.g.*, Pet. for Writ of Mandamus at 24, *In re Howell*, No. 25-0183 (Tex. Feb. 28, 2025) (arguing that "[m]andamus relief is also appropriate to preserve [the attorney's] important substantive and procedural rights" arising out of the trial court's denial of a Rule 91a motion to dismiss based on attorney immunity). And a quick Westlaw search reveals that "attorney immunity" has arisen in some form or fashion in Texas courts, both federal and state, nearly 300 times (and maybe more, given search limitations) since the Fifth Circuit decided *Troice* in 2016.

Enough is enough. It is high time this Court answered what the Fifth Circuit could only guess at. The petitions in *Marshall* and *Hunter* give us a good vehicle for doing so, as we will now explain.

**B**

Take first the *Marshall* case. It may well have been proper for the trial court to have denied attorney immunity there, at least, due to (and up

16

to the extent of) a genuine issue of material fact regarding the "existence of an attorney–client relationship"—*i.e.*, whether Pierce Jr. in fact represented his mother Elaine in the Wyoming transactions. Even so, this Court's decision as to the scope of the attorney-immunity doctrine could inform the proceedings on remand, during which Pierce Jr. could renew his summary-judgment motion in light of our holding and with further record evidence.

Typically, our cases have required the Court to then "decide the legal question of whether said conduct was within the scope of representation." *Taylor*, 644 S.W.3d at 645 (internal quotation marks omitted). But *Marshall* is not one of those cases. Recognizing as much, Pierce Jr. argues that no fact issue exists, citing his *undisputed* testimony that he "provide[s] legal advice and services to [Elaine] in her individual capacity" and that all his actions related to Elaine's moving the Texas trust to Wyoming were taken in his capacity as Elaine's attorney. Thus, Pierce Jr. maintains that "[i]f attorney immunity applies anywhere, it applies here."

To support the trial court's denial on the merits, Preston urges the Court not to credit "Pierce Jr.'s meager, self-interested testimony." Of course, summary judgment may be "based on uncontroverted testimonial evidence of an interested witness" if it "is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and *could have been readily controverted*." Tex. R. Civ. P. 166a(c) (emphasis added). Relying on the latter language, Preston says he could not have "readily controverted" Pierce Jr.'s testimony given the "strikingly un-papered attorney–client relationship" between Pierce Jr. and Elaine.

17

While Pierce Jr. says (and Elaine agrees*) that the attorney–client relationship existed, Preston argues that there is no "paper trail" to prove it—no engagement letter, no contract, no pleadings or correspondence, no billing invoices, and no document signed by Pierce Jr. identifying himself as Elaine's lawyer. Thus, says Preston, the trial court properly denied Pierce Jr. summary judgment based on attorney immunity.

Given the foregoing, the trial court's decision in *Marshall* may not have been an abuse of discretion, although we reserve judgment on that question. True, both Pierce Jr. and Elaine agree that the attorney–client relationship existed. Had the trial court had the testimony from Elaine or her Wyoming counsel before it when it ruled on Pierce Jr.'s summary-judgment motion, the trial court may very well have erred in denying the motion. But perhaps even Pierce Jr.'s self-serving testimony alone *is* enough to reverse the trial court. If the Court ultimately were to hold otherwise, the parties could renew their summary-judgment motions on remand because we may expressly deny mandamus without prejudice to refiling. Taking up the case, however, would still allow the Court to clarify the essentially legal question, and this particular case would have a chance at being resolved properly under the standard we would articulate.

So too in *Hunter*. Preston argues that he had an attorney–client

---

* Elaine's Wyoming counsel for the Wyoming trust transactions testified that Pierce Jr. was his co-counsel in the matter and that Pierce Jr. was acting as "an attorney" who "represent[ed] the interest of his mother." Elaine also testified that Pierce Jr. was acting as her attorney. While Pierce Jr. relies on all this in his brief to the Court, Preston points out that this evidence was not in the record before the trial court when it was deciding Pierce Jr.'s summary-judgment motion. *See In re M-I L.L.C.*, 505 S.W.3d 569, 574 (Tex. 2016) ("In determining whether a trial court abused its discretion, a reviewing court is generally bound by the record before the trial court at the time its decision was made."). A renewed motion in light of any guidance that this Court would provide could, of course, take such points into account if they indeed were to turn out to be essential.

18

relationship with Hunter, such that attorney immunity cannot apply as to the claims at issue. But Preston litigated and lost that issue in a separate case, *see Marshall v. MarOpCo, Inc.*, 714 S.W.3d 724 (Tex. App.—Houston [1st Dist.] 2025, pet. filed), the judgment from which would appear to have issue-preclusive effect here. If so, then *Hunter* boils down to a clean vehicle for clarifying the law of attorney immunity in Texas, through an authoritative pronouncement that only this Court can deliver.

### III

As might be expected when billions of dollars are on the line, all the parties in *Marshall* and *Hunter* are ably represented by high-quality counsel. This Court would therefore have the benefit of effective briefing and oral advocacy were it to take up the attorney-immunity question presented here. To deny these two mandamus petitions is to miss out on as good an opportunity as the Court is likely to get to provide clarity that has been lacking in our opinions addressing this recurring issue. Because the Court refuses to heed the call—Cleanup on aisle SCOTX!— we respectfully dissent.

Evan A. Young
Justice

James P. Sullivan
Justice

**OPINION FILED:** October 10, 2025

19